# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2854 | **DATE** | 4/22/2004 |
| **CASE TITLE** | Arreola vs. Mohammed Choudry, M.D. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    For the reasons set forth on the attached Memorandum Opinion and Order, defendants' Rule 16(c)(1) motion is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 23 2004 | |
| | Notified counsel by telephone. | date docketed | 33 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | 2004 APR 22 PM 5:17 Date/time received in central Clerk's Office | date mailed notice<br><br>mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GILBERT ARREOLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 03 C 2854 |
| | ) |
| MOHAMMED CHOUDRY, M.D., | ) |
| ERNESTO VELASCO, DIRECTOR OF | ) |
| COOK COUNTY JAIL, MICHAEL | ) |
| SHEAHAN, COOK COUNTY SHERIFF, | ) APR 2 3 2004 |
| AND COOK COUNTY | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gilbert Arreola, a prisoner in the Illinois Department of Corrections, has filed suit under 42 U.S.C. §1983 against Mohammed Choudry, a former doctor at Hill Correctional Center; Ernesto Velasco, the director of Cook County Jail; Michael Sheahan, Cook County Sheriff; and Cook County, claiming violation of his equal protection rights as well as deliberate indifference to injuries he suffered while incarcerated. Arreola seeks indemnification from Cook County for any judgment entered against Velasco or Sheahan. The Cook County defendants have filed a motion seeking dismissal of the suit pursuant to Rule 16(c)(1) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, on the grounds that Arreola failed to exhaust administrative remedies before filing suit in this Court. For the reasons stated below, the Court denies defendants' motion.

33

## Background

Arreola is currently incarcerated at Dixon Correctional Center in Dixon, Illinois. He was previously incarcerated at Hill Correctional Center, where on April 22, 2001 he was kicked in his lower right leg and ankle while playing soccer, causing him an injury which required him to be taken to the infirmary by wheelchair. The next day Arreola sought treatment from Dr. Mohammed Choudry, who allegedly refused to treat Arreola upon finding out from the back of Arreola's identification card that he was Jewish. On April 27, 2001, Arreola was sent to Cook County Jail on a writ on an unrelated matter. At Cook County Hospital, Arreola's foot and ankle were x-rayed, and medical personnel determined that his ankle was broken. Arreola was given a cast, ordered a cane, and instructed to refrain from bearing weight on his right leg. Despite this, when Arreola returned to his tier at the jail, he was not allowed a cane or crutches due to a jail policy prohibiting such items. Arreola claims that without his cane or crutches he had extreme difficulty walking.

Arreola alleges that on April 29, 2001 he asked Captain Holmes, a jail officer, for a grievance form, but that Captain Holmes refused his request and instructed him to ask his tier officer for a form. Pl's Resp. at 2. Arreola claims that he asked the first-shift tier officer for a grievance form and permission to move to a tier where he could use crutches, but that after inquiring as to why Arreola needed a grievance form the officer told Arreola that he did not have any. *Id.* Arreola further claims that the following day, he asked the second-shift tier officer for a grievance form, but was told by the officer that he too did not have any forms but would tell the first-shift tier officer to get Arreola one. *Id.* Arreola alleges that he spoke to numerous other officers including Lieutenant Ingram, Captain Malek, and others, none of whom gave plaintiff a

2

grievance form or otherwise assisted him in filing a grievance.

After being repeatedly denied access to a grievance form, Arreola alleges that he wrote a letter to Ernesto Velasco, director of the Cook County Jail, in which he explained his grievance and the steps he had already taken to follow the jail's grievance procedure. Arreola claims that he never received a transfer, a response to his letter, or any other acknowledgment of his grievance. He claims that as a result of not being able to use a cane or crutches, on May 18, 2001 he slipped on a stairwell and broke his cast. The jail refused to give him a new cast, and he did not receive a new one until he returned to Hill Correctional Center several days later. He claims that as a result of defendants' actions and policies he continues to suffer a severe ankle injury including acute pain, deformity, soreness, bruising and swelling. He also claims that he suffers mental distress and anguish.

## Discussion

Rule 16(c)(1) allows a district court to "take appropriate action, with respect to the formulation and simplification of the issues . . . ." Fed. R. Civ. P. 16(c)(1). The elimination of a claim pursuant to Rule 16(c)(1) on the ground that there is no triable issue of fact is tantamount to the grant of summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure (Civil) § 1529, at 299-300 (1990). Arreola has correctly treated the motion as such, citing the standards applicable to summary judgment motions and offering evidence to show why there are material facts that are in genuine dispute on the issue of whether jail grievance procedures were "available" to him. The Court will therefore treat the present Rule 16 motion as a motion for summary judgment under Rule 56.

Rule 56 requires that summary judgment be entered "only when the pleadings,

depositions, affidavits, and admissions filed in the case 'show that . . . there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is evidence that would support the entry of a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). To determine if such material facts are genuinely disputed, the reviewing court must view the evidence in the light most favorable to the non-moving party and resolve all doubts in that party's favor. *Id.* at 245-50. The moving party bears the burden of identifying the material facts which are without genuine dispute and support summary judgment in favor of the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must identify which facts raise genuine disputes. *Id.* at 324.

The only issue presented in this case is whether Arreola exhausted all of his available administrative remedies before he filed suit in this Court. The PLRA provides that a prisoner may not bring an action with respect to prison conditions until the administrative remedies available to the prisoner have been exhausted. 42 U.S.C. § 1997e(a). The text of the statute is clear: the prisoner must exhaust "such administrative remedies *as are available.*" *Id.* (emphasis added). Thus, when a prison or jail has an internal grievance system through which a prisoner can seek to correct a problem or raise a dispute or claim, the prisoner must pursue a grievance to completion through the institution's internal system before filing suit in court under 42 U.S.C. § 1983. *Massey v. Helman,* 196 F.3d 727, 733 (7th Cir. 1999).

Administrative remedies are deemed exhausted and thus unavailable when a prisoner takes every opportunity to obtain relief through outlined procedures but is stymied by prison officials' action or inaction. *See Brown v. Croak,* 312 F.3d 109, 112-13 (3d Cir. 2002); *Powe,*

4

177 F.3d at 394 (5th Cir. 1999); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Foulk*, 262 F.3d at 698 (8th Cir. 2001). Because the PLRA does not define the circumstances under which a remedy is considered "available," courts must look to that term's plain meaning: immediately utilizable, accessible or at hand. *See Brown*, 312 F.3d at 112-13; *Miller*, 247 F.3d at 740. A grievance procedure which is not made known to inmates is not an 'available' administrative remedy. *Hall v. Sheahan*, No. 00 C 1649, 2001 WL 111019, at *1 (N.D.Ill. Feb. 2, 2001). As the court in *Hall* aptly explained, "an institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it." *Id.* at *2 (citing *Johnson v. Garraghty* 57 F. Supp. 2d 321, 329 (E.D. Va. 1999)). Thus, when administrative remedies are effectively made unavailable by the actions of prison officials, the prisoner may file suit without pursuing those unavailable remedies to conclusion.

Illinois Department of Corrections regulations provide that a prisoner wishing to file a grievance must "fill out the **Inmate Grievance Form** (emphasis in original). If forms are not available blank writing paper is acceptable." Cook County Department of Corrections General Order No. 14.5, § III(B)(1). Grievances are to be placed in a designated locked box located on each living unit. *Id.* at (B)(2). The grievances are then collected by a Correctional Rehabilitation Worker, logged, and forwarded through the proper channels to be resolved. Prisoners wishing to appeal a grievance decision must appeal to the Administrator of Program Services or its designee. Their decision on the matter is deemed final. *Id.* at (C)(2). Usually, it is only after such final decision is rendered may a prisoner seek relief pursuant to 42 U.S.C. § 1983 in federal court.

Defendants, however, have not met their burden of proving that Arreola failed to properly

5

exhaust available administrative remedies. In support of their motion, defendants offer the affidavit of John Mueller, Assistant Administrator of the Cook County Department of Correction's Program Services Department. Mueller states that CCDOC has no record or indication that Arreola ever filed a grievance regarding the claims he asserts in this suit. Defendants also attach to their motion the original complaint that Arreola filed with this Court, which according to defendants suggests that Arreola attempted to circumvent Cook County's established grievance procedure when he wrote the letter to Velasco. Relying on these facts, defendants argue that they are entitled to judgment on the issue of exhaustion. However, on the record that is before the Court, we are unable to make this determination as a matter of law.

It is undisputed that Arreola wrote a letter directly to Velasco instead of following the jail's formal grievance procedure. It is genuinely disputed, however, that the jail's grievance procedure was "available" to Arreola. Arreola alleges that he asked several prison officials for grievance forms but claims his requests were either denied outright, or he was told that no forms were available. Pl's Resp. at 2. He further claims that he was never told or otherwise made aware that he could file a grievance on blank writing paper if grievance forms were not made available to him. Thus, there is a genuine issue regarding whether the jail's grievance procedure was actually available to Arreola.

Defendants contend that the Court is precluded by the sham-affidavit rule from considering Arreola's affidavit, in which he alleges that prison officials denied him access to grievance forms and did not make him aware of Cook County's grievance policy. The sham-affidavit rule states that a party may not establish a genuine issue of material fact solely by filing an affidavit that contradicts prior sworn testimony. *See Adelman-Tremblay v. Jewel Companies,*

6

859 F.2d 517 (7th Cir. 1988); *see also Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1169 (7th Cir. 1996) (quoting *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony)). Defendants contend that Arreola's affidavit contradicts the statements he made in his original *pro se* complaint suggesting that he circumvented the grievance procedure because he thought he would receive a quicker response if he went directly to Velasco, the head of the jail. The flaw in defendant's argument, however, is that the sham-affidavit rule applies only to prior sworn testimony. *Bank of Illinois*, 75 F.3d at 1169. A complaint is not sworn testimony, but a general assertion in a lawsuit. *Israel v. Sonic-Montgomery Flm*, 231 F.Supp. 2d 1156, 1165 (M.D. Ala. 2002). Similarly, the statements made in the complaint were not given in response to an "unambiguous" question. *Id.* An admission in a pleading may be used against the party who made it, but it is not irrevocable. *See generally*, 30B M. Graham, Federal Practice and Procedure (Evidence) § 7026, at 271 (2000). Thus, the sham-affidavit rule is inapplicable here.

In any event, the statements in Arreola's affidavit do not contradict the statements made in his letter to Velasco, which appears to have been written before he filed his federal complaint. Though not a sworn statement, the letter tends to support the notion that Arreola is not simply attempting to create a sham issue of fact by totally contradicting his previous story. Defendants dispute whether the letter Arreola submits to the Court is the same one he wrote to Velasco, but the authenticity of this piece of evidence cannot be determined at this juncture. *Anderson*, 477

7

U.S. at 255 (On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.) Thus, when the Court views the evidence in the light most favorable to the Arreola, as Rule 56 requires, we must deny defendants' request for to dismiss Arreola's suit for failure to exhaust.

## Conclusion

For the reasons stated above, defendants' Rule 16(c)(1) motion is denied.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 22, 2004