IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GILBERT ARREOLA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 03 C 2854 |
| MOHAMMED CHOUDRY, M.D., et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Gilbert Arreola contends that in April 2001, while he was incarcerated at Hill Correctional Center, defendant Dr. Mohammed Choudry, a physician at the prison, denied Mr. Arreola medical care for a fractured ankle because he is Jewish. Dr. Choudry is originally from Pakistan (he is now an American citizen), and he is a practicing Muslim.

Mr. Arreola injured his ankle while playing soccer and was taken to the prison infirmary, where he was seen by Dr. Choudry. Arreola contends that Dr. Choudry learned Mr. Arreola's religion from his prison identification card and, as a result, ordered Mr. Arreola to be returned to his cell, without examining Arreola's ankle and without ordering an x-ray. Mr. Arreola alleges that as a result of Dr. Choudry's refusal to treat him, he suffered physical injury, as well as pain and suffering. Mr. Arreola has sued Dr. Choudry under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights.

In the course of discovery, Mr. Arreola has identified Frank Tachau, a professor of political science at the University of Illinois at Chicago, as an expert who will testify on Mr.

Arreola's behalf.  Dr. Tachau's opinions may be summarized as follows:

- The Koran, Islam's holy book, holds that the Jews received the word of God but misunderstood or turned away from the "straight path" of God.
- Muslims believe that the community of faithful Muslims will ultimately prevail over non-Muslims.
- Jews were historically treated as a tolerated religious minority by Muslims.
- Following the emergence of Israel, which Dr. Tachau says constituted a "psychological blow" to Muslims because of Israel's control over important Islamic holy sites, the passions of Muslims have become inflamed, and the resulting identification of Jews as an enemy of Islam has opened the way for Muslims to adopt vicious ethnic and religious stereotypes regarding Jews.
- Pakistan, Dr. Choudry's country of origin, is a Muslim state that has tended to identify with Muslim causes in a variety of ways, including activities relating to extremist Islamic causes.
- Pakistan does not recognize the state of Israel, and Pakistani society, which has never included a visible Jewish community, has a negative perception of Israel.
- "Because of the very nature of [Pakistan's] origins as a Muslim state, and the continuing active role of militant Muslim groups, attitudes that reflect anti-Jewish prejudices are bound to be prominent in Pakistani society and to affect the individual Pakistanis."

*See* Def's Mot. to Bar Testimony of Frank Tachau, Ph.D., Ex. B (Tachau report).  Dr. Tachau's report also includes several references to the hostility of certain groups in Pakistan toward

Americans and toward people of Jewish faith; the United States invasion of Iraq; and the 2002 kidnapping and murder in Pakistan of American journalist Daniel Pearl, who was Jewish.

Dr. Choudry has moved to bar Dr. Tachau's testimony as irrelevant under Federal Rule of Evidence 402, and as unfairly prejudicial under Federal Rule of Evidence 403. For the reasons stated below, the Court grants Dr. Choudry's motion.

## Discussion

Evidence that a party to a suit is a member of a group that adheres to tenets that are probative of a relevant issue is admissible under the Federal Rules of Evidence. In *United States v. Abel,* 469 U.S. 45 (1984), the Supreme Court approved the admission of evidence that the defendant in a robbery case, and a defense witness, were members of a prison gang whose tenets required members to deny its existence and lie, cheat, steal, and kill to protect each other. The defense witness, Mills, was called to discredit the testimony of Ehle, another member of the gang who had testified as a prosecution witness and implicated the defendant in the robbery; Mills claimed that Ehle had told him he intended to falsely implicate the defendant. Ehle was recalled in rebuttal, testified that Mills was lying, and described the tenets of the prison gang. The Supreme Court held that the evidence of membership in the organization, and of the organization's tenets, was relevant and admissible because it "made the existence of Mills' bias towards [the defendant] more probable," and supported an inference that Mills' testimony was slanted in the defendant's favor. *Id.* at 52. The Court also rejected the defendant's argument that the testimony was unfairly prejudicial and thus inadmissible under Federal Rule of Evidence 403. *Id.* at 54.

One might think, based on *Abel,* that Dr. Tachau's testimony is and should be admissible.

3

The difference between this case and *Abel,* however, is fairly obvious: Mr. Arreola makes no suggestion that bias against Jews is a tenet of Islam or is somehow part of being a person of Pakistani origin. At most, Dr. Tachau's testimony would support a conclusion that some (or perhaps many) Muslims, and some or many Pakistanis, dislike Jews. But absent evidence that Dr. Choudry is one of those particular Muslims or persons of Pakistani origin, Dr. Tachau's testimony does not tend to make it more probable that Dr. Choudry harbors a bias against Jews.

The cases upon which Mr. Arreola relies do not support the admissibility of Dr. Tachau's opinions. In *Skorup v. Modern Door Corp.,* 153 F.3d 512 (7th Cir. 1998), the plaintiff claimed she was terminated due to her religion, Roman Catholic. It appears from the court's decision that the plaintiff was permitted to introduce the fact that her employer's general manager, who was claimed to have been involved in the decision to terminate her, was a Baptist. But there is no indication that any evidence was offered regarding the presumed views of Baptists toward Catholics.

*United States v. Hoffman,* 806 F.2d 703 (7th Cir. 1986), involved a criminal charge for threatening the life of the President. Evidence was admitted that the defendant was a religious follower of Rev. Sun Yung Moon of the Unification Church. The evidence was offered to show the defendant's motive for threatening the President, who had failed to grant Rev. Moon a pardon. *Id.* at 705, 708-09. But aside from the fact of the defendant's religious affiliation, no evidence regarding the beliefs or views of adherents of that religion was admitted. Thus the case provides no support whatsoever for the admission of Dr. Tachau's opinions regarding views supposedly commonly held by Muslims and Pakistanis.

In *Chapman v. Kleindienst,* 507 F.2d 1246 (7th Cir. 1974), and *Reed v. Faulkner,* 653 F.

4

Supp. 675 (N.D. Ind. 1987), the plaintiffs' claims involved challenges to prison regulations that were claimed to adversely impact inmates' religious practices (handling of pork by a member of the Nation of Islam, and growing of dreadlocks by a Rastafarian). Evidence regarding the particular religious practices was considered – and had to be, in order for the fact finders to understand what the case was about. The same obviously is not true in this case. In addition, in both *Chapman* and *Reed,* there was evidence directly linking the alleged religious practice or belief to the particular individual involved, evidence that is lacking in this case with regard to Dr. Choudry.

*United States v. Romero,* 189 F.3d 576 (7th Cir. 1999), also relied upon by Mr. Arreola, comes somewhat closer to the mark, but still falls short. *Romero* involved criminal charges of transporting a minor with intent to engage in criminal sexual activity. The government offered the testimony of an FBI agent with expertise in child molestation cases, to testify about the methods and techniques used by so-called "preferential" child molesters – that is, those who have a preference for sexual contact with children and pursue this methodically. *See id.* at 582-83. The court held that this testimony was relevant to assist the jury in understanding conduct of the defendant that was seemingly innocent on the surface but that was alleged to be part of his pursuit of a particular victim. *See id.* at 584-85. In short, the basis for admissibility was nothing like what Mr. Arreola argues here – that because the defendant is a member of a particular group, he likely adheres to prejudices that infect some members of that group. Thus *Romero* does not support admission of "profiling" evidence of the type that Mr. Arreola seeks to offer via Dr. Tachau.

Finally, in *United States v. Alzanki,* 54 F.3d 994 (1st Cir. 1995), the defendant was

5

charged with conspiring to hold a household employee in involuntary servitude. The defendant was a Kuwaiti man who employed a female native of Sri Lanka as a domestic servant. The evidence showed that the victim was forbidden to leave the house, use the telephone, or look out the windows, and she was physically abused, denied adequate food, deprived of medical treatment, and verbally threatened. Among the evidence the government offered at trial was testimony about Kuwaiti customs and practices toward domestic workers. The court found this evidence "highly probative" to show the vulnerability of the victim – who previously had worked as a domestic servant in Kuwait – to certain verbal threats regarding what would happen if she left the defendant's house, to show her vulnerability to the defendant's alleged threat to return her to Kuwait if she did not obey his orders, and to show that defendant, via his familiarity with Kuwaiti customs, used this to play on the victim's vulnerabilities. *Id.* at 1007-08. None of these purposes amounts to the type of "profiling" inference sought by Mr. Arreola via Dr. Tachau's testimony – that because Dr. Choudry is a Muslim and of Pakistani origin, he is biased against Jews.

Perhaps more importantly, nothing in Dr. Tachau's report suggests that hatred or mistreatment of Jews is in any way, shape, or form a tenet or teaching of Islam. Rather, the import of Dr. Tachau's opinions is that many Muslims harbor such views. Though Dr. Choudry is a Muslim, that is insufficient to provide a link between Tachau's opinions and the issues in this case. Rather, the inference that Arreola effectively seeks to have the jury draw by offering Dr. Tachau's testimony amounts to a fairly obvious logical fallacy: many Muslims hate Jews; Dr. Choudry is a Muslim; therefore, Dr. Choudry hates Jews. The Federal Rules of Evidence define relevance broadly, but they do not define it *that* broadly. In any event, the case is not a

trial of Islam, or of persons of Pakistani origin; it is a trial regarding the alleged conduct of Dr. Choudry.

Even if Dr. Tachau's testimony were somehow relevant, the unfair prejudice to Dr. Choudry from its admission far outweighs whatever slight probative value the testimony might be claimed to have. Allowing Dr. Tachau's testimony would in effect encourage the jury to draw the fallacious conclusion referenced above – that because he is a Muslim and Pakistani, he must be anti-Semitic – and would amount to approval of the very type of invidious prejudice for which Mr. Arreola accuses Dr. Choudry in this case.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion to bar the testimony of Frank Tachau [docket no. 92].

_____
      MATTHEW F. KENNELLY
      United States District Judge

Date: March 3, 2006