# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GILBERT ARREOLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 03 C 2854 |
| | ) |
| MOHAMMED CHOUDRY, M.D., | ) |
| ERNESTO VELASCO, SALVADOR | ) |
| GODINEZ, Director of Cook | ) |
| County Jail, TOM DART, | ) |
| Cook County Sheriff, | ) |
| and COOK COUNTY,[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gilbert Arreola is an inmate of the Illinois Department of Corrections previously assigned to Hill Correctional Facility. While at Hill Correctional Facility, and shortly before being transferred to the Cook County Jail on a writ, Arreola injured his ankle while playing soccer. He brought this suit against Dr. Mohammed Choudry, Hill Correctional Facility's medical director; Ernesto Velasco, the former director of the Cook County Jail; Tom Dart, the Sheriff of Cook County; Salvador Godinez, the director of the Cook County Jail; and Cook County under 42 U.S.C. § 1983, seeking injunctive and monetary relief relating to the medical treatment he received or was denied after suffering that injury. Arreola has sued Dart and Godinez only in their official capacities.

---

[1] On December 4, 2006, Tom Dart succeeded Michael Sheahan as the Sheriff of Cook County. Because Sheahan has been sued only in his official capacity, Dart is automatically substituted for Sheahan. Salvador Godinez is now the director of the Cook County Jail. Because Ernesto Velasco is sued in both his individual and official capacities, he remains a defendant, and Godinez has been added to the caption. Fed. R. Civ. P. 25(d)(1).

Defendants have moved for summary judgment on each of Arreola's claims. Arreola has cross-moved for summary judgment against the Cook County defendants on his official capacity deliberate indifference claim. The Court previously denied Dr. Choudry's motion for summary judgment. *See* Order of January 25, 2007. For the following reasons, the Court grants in part and denies in part the Cook County defendants' motion for summary judgment. The Court denies Arreola's cross-motion for summary judgment and also denies his motion for class certification, in part without prejudice.

**Facts**

Arreola is currently incarcerated at Dixon Correctional Center in Dixon, Illinois. He was previously incarcerated at Hill Correctional Center, where on April 22, 2001 he was kicked in his lower right leg and ankle while playing soccer, causing him an injury that required him to be taken to the infirmary by wheelchair. The facts regarding what happened at the Hill infirmary are disputed but are irrelevant for purposes of the present motions.

It is undisputed that on April 27, 2001, Arreola was sent to Cook County Jail on a writ to attend a court hearing in an unrelated matter. The next day, after complaining about the pain in his ankle, Jail officials transported Arreola to John H. Stroger Cook County Hospital. Dr. Pascal Bordy, a resident assigned to the emergency room, examined Arreola and diagnosed a fractured ankle. Dr. Bordy placed Arreola in a splint and ordered that he see an orthopedist for a follow-up exam. Dr. Bordy also prescribed crutches and directed Arreola not to put weight on his fractured ankle.

After Arreola had been treated by Dr. Bordy, Jail officials transported Arreola back to Division Nine at Cook County Jail, where he was to be housed until the continuation of his court hearing on May 18, 2001. Cook County Jail Division Nine has a written policy regarding

2

disabled inmates. Pl.'s Resp. to Defs.' R. 56.1 Stat., Ex. 8. The policy states as follows:

> Because Division Nine is not handicapped accessible on the living units (i.e. bathrooms, showers & water fountains). The department has designated Division Eight as the division where physically challenged inmates are housed in a manner that provides for the inmates safety and security. Division Nine is not designed for handicapped inmates['] use and the division doesn't provide for integration of the handicapped with the inmates in the general population.

*Id.* The policy also provides as follows:

> 1. Division Nine only houses inmates who are ambulatory. However, the division is handicap[ped] accessible [for] staff and visitors.
>
> 2. Crutches/canes are permissible walking aids off of the living units.
>
> 3. Crutches/canes are not to be on the living units. Crutches/canes are to be stored [i]n the officer's control room.
>
> 4. If an inmate is unable to use the division['s] resources (cells, bathrooms, showers, [s]tairs, etc.) [t]he watch commander shall be notified and a transfer to [D]ivision Eight initiated.

*Id.*

After Arreola returned to Division Nine, guards took away his crutches before he entered his living unit and stored them in the guards' control room. Arreola explained that he had a broken ankle and needed the crutches to walk, but officers told him that he would have to get around the living unit without his crutches. Arreola had access to his crutches while outside the living unit, for example, when he visited the law library or recreation yard. While in the living unit, however, Arreola used mops, brooms, and other means of support to attempt to stay off his fractured ankle. Arreola continually requested access to his crutches or a transfer to another division where he could use his crutches. Officers denied his requests. It is undisputed for present purposes that the officers acted as they did pursuant to the Division Nine policy quoted above.

3

Arreola alleges that on April 29, 2001, he asked a Jail officer for a grievance form, but that the officer refused his request and told him no forms were available. After allegedly being refused a grievance form, Arreola claims, he wrote a letter to Ernesto Velasco, then the Director of the Cook County Jail, in which Arreola explained his situation and asked permission to use his crutches in the living unit. Arreola claims that he never received a transfer, a response to his letter, or any other acknowledgment. He claims that as a result of not being able to use a cane or crutches, on May 18, 2001 he slipped on a stairwell and broke his cast. Personnel at the Jail refused to give him a new cast, and he did not receive a new one until he returned to Hill Correctional Center several days later. Arreola contends that as a result of defendants' actions and policies, he continues to suffer pain, deformity, soreness, bruising, and swelling in his ankle. He also contends that he has suffered mental distress and anguish.

## Discussion

Arreola has brought claims against Velasco, Dart, Godinez, and Cook County on behalf of a putative class, alleging deliberate indifference to serious medical needs and unconstitutional conditions of confinement. In these claims, Arreola seeks both injunctive and monetary relief. He also seeks indemnification from Cook County for any judgment rendered against defendants Velasco, Dart, or Godinez. Arreola has moved to certify a class on his claims, but the Court deferred consideration of that motion pending determination of the defendants' motions for summary judgment. This is a course permitted under Rule 23. *See, e.g., Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995).

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is

4

appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). With this standard in mind, the Court will address Arreola's claims.

The Supreme Court has recognized that there is little distinction between a claim of inadequate prisoner medical care and a claim for inadequate conditions of confinement. In particular, the same legal standard applies to both. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*.") (citation omitted). The Court, therefore, will apply the deliberate indifference standard to both of Arreola's claims. The Court must first, however, address two preliminary matters: the defendants' contentions that Arreola did not exhaust internal grievance procedures at the Jail and that he lacks standing to seek injunctive relief.

a. **Exhaustion of internal grievance procedures**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires Arreola to exhaust his administrative remedies before filing suit. The Court previously addressed this issue in its order denying defendants' motion pursuant to Rule 16(c)(1). *See Arreola v. Choudry,* No. 03 C 2854, 2004 WL 868374 (N.D. Ill. Apr. 22, 2004). Because defendants based their motion on an alleged absence of a triable issue of fact, the Court treated the motion as a motion for summary judgment. *Id.* at *2.

The Court denied defendants' prior summary judgment motion because they failed to show that the Jail's grievance procedure was actually available to Arreola. Matters have not

changed in this regard. Arreola states in an affidavit that he asked several Jail officials for grievance forms but he was told that no forms were available. Pl.'s Resp. to Defs.' R. 56 Stat., Ex. 2 ¶ 23. Arreola understood that handwritten grievances on blank writing paper would be rejected. *Id.* ¶ 24. He states that he nonetheless drafted a handwritten grievance and gave it to a correctional officer. *Id.* ¶ 25. After obtaining no response, Arreola typed a letter to Velasco setting out his grievance and mailed it but again received no response. *Id.* ¶¶ 26-28.

Because failure to exhaust is an affirmative defense, defendants bear the burden of proof. *Curtis v. Timberlake,* 436 F.3d 709, 711 (7th Cir. 2005); *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004). The PLRA requires a prisoner to exhaust "such administrative remedies *as are available*." 42 U.S.C. § 1997e(a) (emphasis added). "If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006). In particular, if prison employees refuse to provide inmates with the forms required to file a grievance when requested, then the grievance procedure is not "available" to the inmate. *Dale,* 376 F.3d at 656. Because defendants have not contradicted Arreola's sworn contention that he was denied grievance forms when asked, or his contention that he nonetheless submitted a handwritten grievance to an officer but received no acknowledgment or response, they are not entitled to summary judgment on the basis of non-exhaustion.

b. **Standing on claim for injunctive relief**

To seek injunctive relief, a plaintiff "must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2003). Defendants argue that Arreola lacks standing to seek injunctive relief on his claims against the Cook County defendants because he is no longer incarcerated at Cook County Jail, and it is

6

speculative whether he will be housed there in the future.

Arreola argues that the Court should resolve his pending motion for class certification before addressing whether he has standing to seek injunctive relief. He is putting the cart before the horse. The threshold inquiry is whether Arreola, as the only named plaintiff and proposed class representative, has or ever had standing to seek injunctive relief. The fact that other potential class members might have standing is beside the point. "[A] class does not become a separate entity until it is certified, a class will not be certified unless the named plaintiff has standing at that time." *Robinson v. City of Chicago*, 868 F.2d 959, 968 (7th Cir. 1989) (*citing O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). In some cases a plaintiff whose injunctive relief claim has become moot as the case progressed is still allowed to represent a class, on the rationale that were this not the case, the particular practice would go unchallenged because any representative plaintiff's injunctive relief claim would likewise quickly expire. But even if Arreola could make such a showing in this case, "a representative's claim must at least be live when he files the case." *Robinson,* 868 F.2d at 968 (citing *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 404-05 (1980)). Thus, if Arreola lacked standing to seek injunctive relief when he filed the case, his class claims for that relief would be "dead on arrival, moot the day the complaint was filed." *Holmes v. Fisher,* 854 F.2d 229, 232 (7th Cir. 1988) (quoted in *Robinson,* 868 F.2d at 968). The Court therefore turns to whether Arreola has, or ever had, standing to seek injunctive relief.

Arreola is in the custody of the Illinois Department of Corrections where he is serving a forty-year sentence. He has not been housed at the Cook County Jail since the short period he was there in May 2001 pursuant to a writ issued in a separate case. Arreola argues that he could be transferred back to the Jail "for any number of routine reasons." This contention is

7

unsupported. By the time he had filed this suit, Arreola had exhausted his direct appeal rights regarding his criminal conviction, and that conviction had been affirmed. Though he still had some procedures left regarding his post-conviction petition, it was entirely speculative whether this would result in his return to the Jail – let alone that he would be subjected to the Division Nine crutch policy in a way that might violate his constitutional rights.

Arreola also contends that he could be transferred to the Jail to testify before the Court in this case. Arreola would not, however, be held at the Jail during trial. As the Cook County defendants point out, because Arreola is in the custody of the Illinois Department of Corrections, the Sheriff does not have to house Arreola at the Jail. Defs.' Reply at 9. Rather, he likely would be housed at a nearby Illinois Department of Corrections facility such as Pontiac Correctional Center or Stateville Correctional Center. Indeed, that is the usual practice for IDOC inmates who are brought to this Court to testify in civil cases.

In sum, there is no basis other than speculation to support any claim that, at the time he filed this suit (or thereafter), Arreola would in the future be subjected to Division Nine's policy or any like version in other divisions of the Jail. Speculation is insufficient to confer standing. *See Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993) ("the mere possibility that Knox may sometime in the future be returned to the segregation unit does not establish a real and immediate case or controversy."). *See also Sierakowski*, 223 F.3d at 444 ("[b]ecause it was not reasonably likely that the former arrestees would be arrested again, they could not establish a real threat of future injury sufficient to seek such prospective relief.") (citing *Robinson*, 868 F.2d at 966). For this reason, defendants are entitled to summary judgment on Arreola's claims for injunctive relief.

8

### c. Official capacity claims for damages

Arreola has brought claims against Sheriff Tom Dart and Director of the Cook County Jail Salvador Godinez in their official capacities. An official capacity claim against a governmental official amounts to a claim against the entity of which the official is an agent. *See Kentucky v. Graham*, 773 U.S. 159, 169 (1985); *Richardson v. Sheahan*, 270 F.3d 730, 439 (7th Cir. 2001). Accordingly, to succeed on his official capacity claims, Arreola must satisfy the requirements of *Monell v. Department of Social Service*, 436 U.S. 658 (1978), which requires a plaintiff to show that he was subjected to an unconstitutional policy of the Sheriff or the Jail, as opposed to an error in implementing a valid policy. *See Hernandez v. Sheahan*, 455 F.3d 772, 774 (7th Cir. 2006). Arreola contends that defendants are liable in their official capacities because the Division Nine disability policy violates the Eighth Amendment's ban on cruel and unusual punishment because it caused his serious medical needs to go unaddressed.

A prisoner bringing a claim of medical mistreatment pursuant to 42 U.S.C. § 1983 must show "acts or omissions sufficiently harmful to evidence deliberate indifference to a serious known medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610-11 (7th Cir. 2000). A claim for deliberate indifference includes both an objective and subjective element. To survive defendants' motion for summary judgment, Arreola must first provide evidence from which a reasonable jury could find that he had an objectively serious medical need. *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002). Second, he must provide evidence from which a reasonable jury could find that the Jail officials acted with a "sufficiently culpable state of mind" in maintaining a policy that, on its face, intentionally interfered with Arreola's medical needs. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002); *see also Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).

9

There is no doubt that a broken ankle can constitute a serious medical need. *See Murphy v. Walker*, 51 F.3d 714, 720 (7th Cir. 1995) (broken hand is a serious medical need for purposes of an inmate's section 1983 claim). A reasonable jury could find that the condition of Arreola's ankle met this standard even after he had been treated for it – particularly in light of the fact that he was told to stay off the ankle and was prescribed crutches. In addition, there is no dispute that Jail officers were aware of Arreola's condition. At issue, therefore, is the constitutionality of the Division Nine crutch policy.

The policy, on its face, distinguishes between "handicapped" inmates – those who may require special care or assistance to function in an institutional setting – and "ambulatory" inmates. Handicapped inmates are to be transferred to Division Eight; ambulatory inmates are to remain at Division Nine, and their crutches or canes are to be taken from them. Though the policy does not define the term "ambulatory," the common meaning, in this context, refers to a person who is "able to walk about." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).

The policy leaves it up to correctional officers to determine whether a prisoner is "ambulatory." If so, the prisoner remains at Division Nine, and his crutches or cane is to be taken away. This is so even if a medical doctor has prescribed the crutches and has thus, implicitly if not explicitly, determined that his patient is not to be "ambulatory" without assistance.

The Seventh Circuit has made it clear that the Eighth Amendment does not permit "prison officials [to] substitute their judgments for a medical professional's prescription. Of course they cannot." *Zentmeyer v. Kendall County,* 220 F.3d 805, 812 (7th Cir. 2000). As the court stated in *Zentmeyer,* "if a defendant consciously chose to disregard a nurse or doctor's

10

directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference." *Id.*

The Division Nine policy permits correctional officers to disregard the directions of medical professionals when it tells them to, in effect, make their own judgment of whether an inmate is "ambulatory" and can get around without crutches or a cane. A policy that, like this one, allows correctional officers to overrule physicians "may well . . . exhibit[ ] the necessary deliberate indifference" to serious medical needs. *Id.* For this reason, defendants are not entitled to summary judgment on Arreola's official capacity claims.

Arreola's summary motion, however, must likewise be denied. In some cases, the actual condition of a prisoner for whom a cane or crutches has been prescribed might be good enough that a jury reasonably could find that removing those implements does not amount to deliberate indifference to a serious medical need. The question of whether application of the Division Nine policy amounted to deliberate indifference to a serious medical need in Arreola's particular situation is a fact-bound inquiry that depends on the seriousness of his condition at the time his crutches were taken away – a matter not clearly established in the present record.

Even though both sides have moved for summary judgment, that does not automatically make entry of summary judgment in favor of one side appropriate. As the Seventh Circuit has stated,

> because summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence in the record, whether there is any material dispute of fact that requires a trial.

*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In short, neither side is entitled to summary judgment on Arreola's official capacity

11

claims.

### d.   Individual capacity claim against Velasco

To hold former director Velasco liable in his individual capacity, Arreola must prove that Velasco was personally involved in the alleged deprivation of proper medical care. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Though direct participation is not required, "there must at least be a showing that the [defendants] acquiesced in some demonstrable way in the alleged constitutional violation." *Id.*

Arreola's only evidence pointing to Velasco's involvement in the decision not to allow Arreola to use his crutches and to deny him a transfer is the letter Arreola says he sent Velasco describing his condition and asking for permission to use his crutches in the living unit at Division Nine. There is no direct evidence that Velasco received or reviewed the letter. In seeking summary judgment, Velasco relies on *Johnson v. Snyder*, 444 F.3d 579 (7th Cir. 2006), in which the Seventh Circuit held that "[t]he fact that [plaintiff] sent a letter or letters to Director Snyder is insufficient to create a genuine issue of material fact regarding defendant Snyder," because "there is no evidence that Snyder actually read Johnson's communications or had any subjective awareness of Johnson's condition." *Id.* at 584. It is noteworthy, however, that the court also relied on what it characterized as "evidence that Snyder does not review inmate correspondence relating to grievances; that task is delegated to subordinates." *Id.* Velasco has pointed to no such evidence in the present case. *Johnson*, therefore, is distinguishable.

The fact that a party mailed a document creates a rebuttable presumption that the addressee received it. *See, e.g., McPartlin v. Comm'r of Internal Revenue Serv.*, 653 F.2d 1185, 1191 (7th Cir. 1981). The Court sees no reason why that same presumption should not apply in the present context. Under the circumstances, there is a genuine issue of fact regarding

12

Velasco's receipt of the letter. And even if Velasco ignored the letter after receiving it, a reasonable jury could find that sufficient to impose personal liability upon him.

For these reasons, the Court denies Velasco's motion for summary judgment on Arreola's individual capacity claims against him.

      **e.**      **Qualified immunity on claim against Velasco**

Velasco contends that he is entitled to qualified immunity on the individual capacity claim against him. To determine whether qualified immunity exists in the context of a summary judgment motion, a court asks two questions: first, whether the facts, taken in the light most favorable to the plaintiff, show the defendants' alleged conduct violated a constitutional right; and second, whether the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Though Velasco does not argue that his alleged conduct did not violate Arreola's constitutional rights, but rather skips ahead to the second part of the test, the Court will address the point briefly. As stated above, to sustain a claim under the Eighth Amendment for failure to provide adequate medical care, an inmate must demonstrate that his condition was "objectively serious" and that the defendant was deliberately indifferent to that condition. *See, e.g., Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). A broken ankle can be objectively serious, even after a doctor has treated it. *See Murphy,* 51 F.3d at 720. If Arreola were able to persuade a jury that Velasco was aware he had a broken ankle and needed his prescribed crutches to be able to walk on it, but was denied access to his prescribed crutches, a jury reasonably could find that Velasco had been deliberately indifferent to Arreola's serious medical need. As discussed earlier, Arreola has offered evidence from which a jury reasonably could make such findings.

The Court turns, therefore, to whether the right claimed by Arreola was clearly

established at the time of the alleged violation. Velasco argues that there was no clearly established precedent that would indicate that the policy of barring the introduction of dangerous contraband, such as crutches, into the general population of the Jail violated a detainee's constitutional rights. This argument misses the point. The issue is not whether jail officials have the right to promulgate rules and regulations to promote inmate and officer safety. They do. Rather, the issue is whether it was clearly established that denying crutches to an inmate who could not walk due to a broken ankle violates the Eighth Amendment. The Seventh Circuit has consistently held that denial of prescribed medication to an incarcerated person violates his constitutional rights. *See, e.g., Board v. Farnham*, 394 F.3d 469, 485 (7th Cir. 2005) (denial of use of asthma inhaler); *Walker v. Benjamin*, 293 F.2d 1030, 1040-41 (7th Cir. 2002) (denial of prescribed pain medication); *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999) (denial of prescribed pain medication). Denial of prescribed medical devices is not materially different. More generally, as discussed earlier, the Seventh Circuit made it clear, well before Arreola ever appeared at the Cook County Jail, that "prison officials may [not] substitute their judgments for a medical professional's prescription." *Zentmeyer,* 220 F.3d at 812. Under the circumstances, the Court cannot say that the law supporting Arreola's claim was not clearly established at the time of the alleged constitutional violation.

  f.  **Class certification**

Arreola has moved to certify a class on both his damages and injunctive relief claims. The Court previously suspended briefing pending resolution of the parties' summary judgment motions. *See* Order of June 1, 2006. We now return to the matter, because our rulings on the parties' summary judgment motions has a material impact on the issue of class certification.

  Arreola seeks certification of a Rule 23(b)(2) class on his claim for injunctive relief and a

Rule 23(b)(3) class on his claim for damages. In light of the Court's ruling that Arreola lacks standing to seek injunctive relief, his motion for certification of a Rule 23(b)(2) class is denied. *See Robinson*, 868 F.2d at 968 (citing *O'Shea*, 414 U.S. at 494) ("because a class does not become a separate entity until it is certified, a class will not be certified unless the named plaintiff has standing at that time.").

The Court denies, without prejudice, Arreola's motion to certify a class on his claim for damages. It is readily apparent that the Court's rationale for denying summary judgment on Arreola's official capacity claims impacts the issues of the typicality of Arreola's claims, whether class issues predominate, and whether a class action is a superior method for fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). If Arreola wishes to pursue class certification on the damages claim, he must renew his motion by no later than February 20, 2007.

### Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment in part and denies it in part [docket no. 139]. The Court grants summary judgment in favor of defendants to the extent plaintiff seeks injunctive relief but otherwise denies the motion. The Court denies plaintiff's motion for partial summary judgment and his motion for class certification [docket nos. 129, 172], and denies as moot his motion to strike [docket no. 195]. The Clerk is directed to add as a defendant Salvador Godinez, Director of Cook County Jail, in his official capacity, and to substitute for defendant Michael Sheahan the current Sheriff of Cook County, Tom Dart, in his official capacity.

_____
MATTHEW F. KENNELLY
Date: January 30, 2007 United States District Judge