05415-P0493
SGS/JLB/kmp

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GILBERT ARREOLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03 C 2854 |
| | ) | |
| MUHAMMAD CHOUDRY, M.D.; | ) | Hon. Matthew F. Kennelly |
| ERNESTO VELASCO, Director of Cook | ) | |
| County Jail; MICHAEL SHEAHAN, Cook | ) | |
| County Sheriff; and COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

### DR. MUHAMMAD CHOUDRY'S FEDERAL RULE OF CIVIL PROCEDURE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COMES Defendant, MUHAMMAD CHOUDRY, M.D., by his attorneys, HEYL, ROYSTER, VOELKER & ALLEN, and for his Motion for Judgment as a Matter of Law, pursuant to Federal Rule of Civil Procedure 50, states as follows:

**I.  INTRODUCTION**

1. Plaintiff Gilbert Arreola claims under 42 U.S.C. § 1983 that Defendant Muhammad Choudry, M.D., the Medical Director at Hill Correctional Center (hereinafter "HCC") in 2001, violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment by treating Plaintiff with deliberate indifference on April 23, 2001.

2. This Court, having had the benefit of hearing all of Plaintiff's evidence in this matter, should grant judgment as a matter of law in favor of Dr. Choudry, pursuant to Federal Rule of Civil Procedure 50, because he is shielded from liability based upon the doctrine of qualified immunity. Alternatively, this Court should grant judgment as a matter of law in favor of Dr. Choudry because there is no legally sufficient evidentiary basis for the jury to find that Dr. Choudry knew that Plaintiff

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

1

was seriously injured on April 23, 2001, and consciously disregard that risk. Finally, in the alternative, this Court should dismiss Plaintiff's prayer for punitive damages as a matter of law because there is no evidence that Dr. Choudry acted maliciously or in reckless disregard of Plaintiff's constitutional rights.

## II. STANDARD OF REVIEW

3. Rule 50(a) allows a court to enter judgment as a matter of law during trial whenever "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). See Murray v. Chicago Transit Auth., 252 F.3d 880, 887 (7th Cir. 2001). This standard mirrors the standard for granting summary judgment. Murray, 252 F.3d at 886-87.

4. In ruling on a Rule 50 motion, the court should give credence to the evidence favoring the nonmovant, as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. Starks v. Powers, No. 02-CV-1252-JPG, 2006 WL 929359 (S.D. Ill. April 10, 2006) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000)). See also Thomas v. Stalter, 20 F.3d 298, 304 (7th Cir.1994) (stating that the district court may weigh the evidence in evaluating a motion for a new trial; in doing so, it may assess the witness' credibility).

## III. EVIDENCE AT TRIAL

5. <u>Plaintiff's Testimony</u>: Plaintiff testified that on April 22, 2001, he injured his ankle while playing soccer at HCC. He was taken to the infirmary where he was housed overnight and provided care by the nursing staff. While Plaintiff was in the infirmary, he testified that he was given aspirin, cold packs, and his foot was wrapped and elevated. None of his requests for aspirin or cold packs were refused. Plaintiff was seen by Dr. Choudry on the morning of April 23, 2001,

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

2

05415-P0493
SGS/JLB/kmp

accompanied by Officer Adelphino Pacheco, Jr. Plaintiff testified that Dr. Choudry obtained his identification card and learned from the back of the card that Plaintiff was Jewish, which, according to Plaintiff, Dr. Choudry stated with a smirk. Plaintiff testified that Dr. Choudry tossed the identification card to Officer Pacheco, who commented that he had never previously seen a "Hispanic Jew." Plaintiff testified that he took this statement as a joke. Plaintiff further testified that Dr. Choudry refused to order an x-ray, did not conduct an hands-on examination of his foot/ankle, did not tell Plaintiff of his diagnosis, and did not provide Plaintiff with any bandage or wrap for his foot and ankle. Dr. Choudry did, however, send him back to the housing unit with a walker.

6. <u>Knox County Complaint</u>: The Knox County Complaint that Plaintiff signed under oath was, or will be, admitted as substantive evidence at trial. Therein, Plaintiff affirms under oath that: (1) Dr. Choudry diagnosed his injury as a sprain and informed Plaintiff of his belief that no bones had been broken or fractured (para. 6(c)); (2) Dr. Choudry treated Plaintiff's injuries as a sprain, bound his ankle with the use of a foot wrap and provided Plaintiff with aspirin (para. 6(d)); (3) Dr. Choudry advised Plaintiff that his foot and ankle were returning to a normal condition; and, (4) Dr. Choudry assured Plaintiff that, in the course of about one week, he would fully recover use of his foot and ankle, and that his foot and ankle would be in as good condition as before the accident (para. 7).

7. <u>Officer Adelphino Pacheco, Jr.</u>: Officer Pacheco testified that it was his routine practice to accompany Dr. Choudry on his rounds in April of 2001. He testified that he never witnessed Dr. Choudry ever try to discover an inmate's religion, and he never observed Dr. Choudry discriminate against any inmate, or deny any inmate medical treatment, on religious grounds. Moreover, contrary to the testimony of Plaintiff, Officer Pacheco testified that he never uttered the phrase "Hispanic Jew," Dr. Choudry never commented on Plaintiff's religion, and he never witnessed

HEYLROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

3

05415-P0493
SGS/JLB/kmp

the occurrence described by Plaintiff. Officer Pacheco testified unequivocally that he would remember the events described by Plaintiff if they had occurred in his presence.

8. <u>Dr. Craig Beyer</u>: Plaintiff's retained orthopedic physician, Dr. Beyer, testified that the standard of care required Dr. Choudry to order an x-ray of Plaintiff's ankle on April 23, 2001, based upon his review of the nurse's progress notes. Dr. Beyer further testified that the Ottawa Rule(s), which is a screening tool used to determine whether x-rays are immediately indicated, can represent the minimum level of acceptable medical care if properly applied.

9. <u>Tyrone Reyna</u>: Inmate Tyrone Reyna testified that he observed Plaintiff get injured while playing soccer. He further testified as to his observations of Plaintiff's ankle and subjective complaints, and that he and other inmates helped Plaintiff with Plaintiff's activities of daily living so that Plaintiff would not have to bear weight on his ankle.

10. <u>Dr. Muhammad Choudry's Videotaped Deposition</u>: Plaintiff's deposition designations for Dr. Choudry, and Defendant's counter-designations, were played for the jury through the use of Dr. Choudry's videotaped deposition at trial. Therein, Dr. Choudry testified that the Ottawa Rule(s) was an accepted medical practice in April of 2001 to screen patients to determine whether x-rays are immediately indicated. Dr. Choudry further testified as to his assessment that Plaintiff could have had an ankle sprain on April 23, 2001, and that x-rays were not immediately indicated as a result of the Ottawa Rule(s) examination that he performed with respect to Plaintiff's ankle on April 23, 2001. Dr. Choudry testified by way of his deposition that he recommended that Plaintiff return in 7-10 days, and that he would have ordered x-rays if Plaintiff was still complaining of pain at that time, in accordance with the Rule(s). Dr. Choudry's further testified that it was his understanding that Plaintiff had access to 24 hour nursing care if his symptoms worsened prior to his follow-up

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

4

appointment. Finally, Dr. Choudry testified that he has never refused medical treatment to anyone based on religious grounds.

## IV. DR. CHOUDRY IS SHIELDED FROM LIABILITY BASED UPON THE DOCTRINE OF QUALIFIED IMMUNITY.

11. Since Dr. Choudry was employed to provide medical services to inmates at HCC, he is entitled to assert the defense of qualified immunity. Williams v. O'Leary, 55 F.3d 320, 324 (7th Cir. 1995) (holding that a private physician, whose employer contracted with the state to provide medical services, was entitled to assert the defense of qualified immunity in a deliberate indifference suit; affirming the district court's entry of judgment as a matter of law on qualified immunity grounds); Sherman v. Four County Counseling Center, 987 F.2d 397, 405-06 (7th Cir. 1993) (same in the context of a psychiatric facility).

12. Thus, Dr. Choudry will be immune from liability in this matter if this Court determines that his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sherman, 987 F.2d at 401. In order to make this determination, this Court must first determine whether the alleged conduct violated Plaintiff's constitutional rights. If his rights were violated, this Court must decide whether they were clearly established at the time the violation occurred. Sherman, 987 F.2d at 401, 406.

13. Whether a constitutional right is clearly established is a question of law. The right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful. Until a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established. Sherman, 987 F.2d at 401, 406-07. See Greffey v. State of Ala. Dept. of Corrections, 996 F.Supp. 1368 (N.D. Ala. 1998) (in a medical deliberate indifference case, the plaintiff must establish that the medical defendant's actions were clearly as great a departure from appropriate medical standards as previous

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

5

departures found unconstitutional in prior cases; "[v]iewed through the clear lens of hindsight, [the doctor's] clinical impressions may have been faulty . . . [but] that does not necessarily mean either that [the doctor's] conduct constituted psychological malpractice, or that it rose to the level of a constitutional violation.").

14. It is Plaintiff's burden to convince the Court that a clearly established constitutional right existed on April 23, 2001. Id. at 408. Plaintiff failed to satisfy this burden since Plaintiff presented no evidence to establish that the application of the Ottawa Rule(s) was unconstitutional, or that the Constitution required Dr. Choudry to order x-rays of his ankle on April 23, 2001. Plaintiff's own retained orthopedic surgeon, Dr. Beyer, even admitted that the Ottawa Rule(s) represent the minimum level of acceptable medical care. Moreover, no case has ever been decided which prohibits a physician from applying the Ottawa Rule(s) in order to determine whether x-rays are indicated immediately. Furthermore, no case has ever held that x-rays are always required for every patient who seeks medical treatment for an injured ankle. The United States Supreme Court even suggested to the contrary in Estelle, by stating:

> [T]he question whether an X-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . .

Estelle, 429 U.S. at 107. As a result, this Court should enter judgment as a matter of law in favor of Dr. Choudry on qualified immunity grounds because Plaintiff failed to prove that he had a "clearly established" constitutional right to x-rays on April 23, 2001.

15. Plaintiff's testimony regarding Dr. Choudry's purported religious discrimination is inapposite to this Court's qualified immunity analysis because the subjective good faith of Dr. Choudry is irrelevant to determining whether qualified immunity applies. Rather, it is the "objective legal reasonableness" of Dr. Choudry's actions or failure to act, assessed in light of the "clearly

HEYLROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

6

05415-P0493
SGS/JLB/kmp

established" legal rules, that controls. Wilson v. Layne, 526 U.S. 603, 614 (1999). See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (establishing an objective standard for qualified immunity to make summary judgment an appropriate device to "avoid excessive disruption of government and permit the resolution of many insubstantial claims").

16. In conclusion, because Plaintiff has not presented evidence at trial to demonstrate that Dr. Choudry's alleged departure from professional judgment was comparable to that previously found to constitute a violation of constitutional rights, this Court should grant judgment as a matter of law in favor of Dr. Choudry and against Plaintiff.

**V. NO REASONABLE JURY COULD FIND IN FAVOR OF PLAINTIFF WITH REGARD TO HIS DELIBERATE INDIFFERENCE CLAIM.**

17. Alternatively, now that this Court has had the opportunity to hear, and weigh, Plaintiff's evidence in this matter, it should grant judgment as a matter of law in favor of Dr. Choudry, pursuant to Federal Rule of Civil Procedure 50, because there is no legally sufficient evidentiary basis for the jury to find that Plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment on April 23, 2001.

18. The law is well settled that a prison inmate plaintiff, attempting to prevail on a claim of medical mistreatment pursuant to 42 U.S.C. § 1983, must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to a serious known medical need;" "claims of negligence and/or malpractice are insufficient to support such a cause of action." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennan, 511 U.S. 825 (1994); Sherrod v. Lingle, 223 F.3d 605 (7th Cir. 2000). The established standard contains both an *objective* and a *subjective* component that Plaintiff must prove. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). The inmate must have an *objectively* serious medical condition, and must establish that the health care provider was

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

7

05415-P0493
SGS/JLB/kmp

*subjectively* aware of and consciously disregarded a risk to the inmate's health or safety. Farmer, 511 U.S. 837 (1994); Sherrod, 223 F.3d 610; Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999).

19. Subjective recklessness, as used in the criminal law, is the appropriate test for "deliberate indifference." Farmer, 511 U.S. at 839; Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir.1991) (holding that neither simple nor gross negligence is sufficient). The medical officer must know that there is a serious injury or risk of permanent disablement, and then must consciously disregard that risk. Farmer, 511 U.S. at 837. Even when clear mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. A physician's diagnosis of a condition is presumptively representative of the physician's state of mind. Estate of Cole v. Fromm, 94 F.3d 254, 261 (7th Cir.1996), cert. denied, 519 U.S. 1109 (1997).

20. This matter is analogous to Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3rd Cir. 1990). In Brown, the plaintiff inmate testified at trial that, when he went to see the prison physician complaining of pain in his ribs, the doctor conducted only a visual examination of his upper chest and did not press on his ribs or order x-rays, thereby failing to discover the full extent of his injuries. The testimony of both the plaintiff and the doctor revealed that the doctor concluded that the plaintiff had only a bruise. Upon release from custody, the plaintiff obtained medical treatment at a hospital where two ribs were found to be broken. The Seventh Circuit stated:

> Even if we accept as credible plaintiff's testimony that the doctor did not touch the injured area, we could not characterize the doctor's conclusion based on a visual examination that plaintiff had only a bruise as a failure to exercise medical judgment. The most that can be said of plaintiff's claim is that it asserts the doctor's exercise of deficient professional judgment.

Brown, 903 F.2d at 278. See also Ruvalcaba v. City of Los Angeles, 167 F.3d 514 (9th Cir. 1999) (granting the prison doctor's motion for judgment as a matter of law even though the doctor failed to take the inmate's medical history and failed to diagnose the inmate's fracture; "[a]lthough such

HeylRoyster
VOELKER
&Allen

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

8

errors may support a finding that [the doctor] was negligent, the facts do not support an inference that [the doctor] acted purposely with deliberate indifference").

21. Similarly, even if this Court takes Plaintiff's testimony as true that Dr. Choudry only conducted a visual inspection of his ankle and did not conduct an hands-on examination, "[t]he most that can be said of plaintiff's claim is that it asserts the doctor's exercise of deficient professional judgment." Brown, 903 F.2d at 278. Such does not rise to the level of a constitutional violation.

22. Even though Plaintiff testified that Dr. Choudry made disparaging remarks about his religion on April 23, 2001, such does not establish that Dr. Choudry consciously disregarded the risk of a fracture. Moreover, this Court is permitted to assess Plaintiff's credibility and give Plaintiff's testimony no credence particularly in light of his prior inconsistent sworn statements in his Knox County Complaint that Dr. Choudry diagnosed his injury as a sprain and treated his injury as a sprain by wrapping his foot and providing him with aspirin. Also, this Court can consider the testimony of Officer Pacheco, who is a disinterested witness, that Dr. Choudry never made the disparaging remarks, even though Plaintiff identified Officer Pacheco as an eyewitness to the occurrence. See case law cited supra Paragraph 4, which allows the Court to weigh Plaintiff's credibility and the testimony of disinterested witnesses. See also Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997) (affirming judgment on the pleadings in favor of the defendant prison doctor where it was alleged that delays in treatment resulted in an infected pilonidal cyst; the court found the plaintiff's allegations in his complaint to be binding admissions and "fatally undermined" his deliberate indifference claim because he gave a detailed account of the treatment he received). In short, no reasonable jury could find that Dr. Choudry acted with deliberate indifference based upon Plaintiff's trial testimony, since Plaintiff's trial testimony is contradicted by his own prior sworn statements and the testimony of the above-referenced disinterested witnesses.

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

23. Furthermore, even presuming that Plaintiff had sustained a fractured ankle prior to his being seen by Dr. Choudry, any initial misdiagnosis of the problem does not reflect such substandard care as to rise to the level of an Eighth Amendment violation. As this Honorable Court is well aware, neither simple medical malpractice, Steele v. Choi, 82 F.3d 175, 178-79 (7th Cir. 1996), nor mere dissatisfaction with a doctor's prescribed course of treatment, Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996), is actionable under 42 U.S.C. § 1983. A health care provider's erroneous treatment implicates the Constitution only when that provider's conduct reflects a substantial departure from accepted medical judgment, practice, or standards. Sherrod, 223 F.3d at 611; Vance v. Peters, 97 F.3d 987, 92 (7th Cir. 1996).

24. So long as medical care is provided, which is the case here (i.e., cold packs, aspirin, elevation, foot wraps, a walker, and a recommendation that Plaintiff return to see Dr. Choudry in seven to ten days), there is no deliberate indifference because such care meets "minimal standards of adequacy." Holmes v. Sheahan, 930 F.2d 1196, 1199 (7th Cir.1991). See Taylor v. Dutton, 85 F.3d 632, 1996 WL 253856 (7th Cir.1996) (affirming summary judgment to prison doctor who treated the plaintiff inmate's torn anterior cruciate ligament with wraps, ice, injections, and medical "lay-ins," as opposed to arthroscopic surgery, which was recommended by one of the inmate's consulting doctors, since the inmate did not establish that the prison doctor knew of an excessive risk to his health, and then failed to act; "mere difference in opinion" is insufficient to establish deliberate indifference).

25. In sum, no reasonable jury could conclude based upon the evidence that the treatment provided to Plaintiff in the infirmary, including cold packs, aspirin, foot wraps, and elevation, followed by Dr. Choudry's diagnosis of a sprain and treatment which included the doctor providing a walker and a recommendation that Plaintiff return in seven to ten days, was so inadequate as to constitute cruel and unusual punishment under the Eighth Amendment. As a result, this Court, having

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

had the benefit of hearing and weighing the evidence, should enter judgment as a matter of law in favor of Dr. Choudry.

## VI. PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE DISMISSED BECAUSE THERE IS NO EVIDENCE THAT DR. CHOUDRY'S CONDUCT WAS MALICIOUS OR IN RECKLESS DISREGARD OF PLAINTIFF'S RIGHTS.

26. In order for Plaintiff to recover punitive damages, he must prove that Dr. Choudry's conduct was malicious or was in reckless disregard of Plaintiff's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, it reflects complete indifference to Plaintiff's safety or rights. See Seventh Circuit Pattern Jury Instruction No. 7.24.

27. This Court should strike and dismiss Plaintiff's prayer for punitive damages in this matter as a matter of law because there is no evidence that Dr. Choudry acted maliciously or in reckless disregard of Plaintiff's constitutional rights.

WHEREFORE, for the foregoing reasons, Dr. Choudry respectfully requests that this Honorable Court enter judgment as a matter of law in his favor, and against Plaintiff, pursuant to Federal Rule of Evidence 50, or, alternatively, to dismiss Plaintiff's prayer for punitive damages as a matter of law, and for such other relief as this Court deems just and proper.

MUHAMMAD CHOUDRY, M.D.

BY: _s/ Scott G. Salemi_
HEYL, ROYSTER, VOELKER & ALLEN
Scott G. Salemi, Esq.
ARDC 6209932

HEYL ROYSTER
VOELKER & ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399

G:\93\P0493\P0493PMI 039

05415-P0493
SGS/JLB/kmp

# **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause via in-hand delivery and the CM/ECF System on the 16th day of May, 2007.

TO: Laura Cullison
Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive
Chicago, IL 60606

Mr. Dominic Lanzito, A.S.A.
Mr. Paul Castiglione, A.S.A.
Office of Cook County States Attorney
500 Richard J. Daley Center
Chicago, IL 60602

BY: s/ Scott G. Salemi
Scott G. Salemi

HEYL ROYSTER
VOELKER
&ALLEN

Second Floor
National City Bank
Building
120 West State Street
P.O. Box 1288
Rockford, IL 61105-1288
Fax (815) 963-0399